OSCAR LUIS LOPEZ, Appellant,

v.

LA MADELEINE OF TEXAS, INC., Individually and d/b/a La Madeleine, French Bakery & Café and d/b/a La Madeleine; La Madeleine, Inc., Individually and d/b/a La Madeleine French Bakery & Café and d/b/a La Madeleine; and La Madeleine de Corps, Inc., Individually and d/b/a La Madeleine French Bakery & Café and d/b/a La Madeleine, Appellees.

No. 05–04–00847–CV.

Court of Appeals of Texas, Dallas.

Aug. 25, 2006.

Rehearing Overruled Oct. 2, 2006.

Charles Clayton Miller, The Law Offices of Miller and Curtis, L.L.P., Louis S. Hakim, Dallas, for Appellant.

Darryl J. Silvera, Silvera & Associates, Alexander N. Beard, Bishop & Hummert, P.C., Dallas, for Appellee.

Before Justices WHITTINGTON, MOSELEY, and LANG–MIERS.

## OPINION

Opinion By Justice MOSELEY.

This personal injury case presented the trial court with a dilemma. Appellee La Madeleine of Texas., Inc., individually and d/b/a La Madeleine French Bakery and Café and d/b/a La Madeleine, used a surveillance videotape and photos at trial to show—apparently successfully—that appellant Oscar Luis Lopez had testified falsely about the extent of his injuries. However, counsel for La Madeleine intentionally failed to disclose the existence of the tape and photos during discovery, despite a specific discovery request that La Madeleine produce any "tape recordings, pictures or videos of Plaintiff or any witness in this case."

Thus, the dilemma is whether a trial court may, under our rules, allow a party to impeach a witness and refute possibly perjured testimony by introducing evidence that was withheld from disclosure in violation of the rules regarding discovery. The trial court, concerned about Lopez's possible perjury, admitted the undisclosed evidence over Lopez's objection and despite a pretrial order stating that evidence not produced would not be admitted.

After the trial court allowed La Madeleine to introduce the videotape and photos, the jury found La Madeleine was not negligent in causing Lopez's injuries, and the trial court entered a take-nothing judgment. The trial court also denied Lopez's motion for new trial and motion for sanctions based on La Madeleine's failure to disclose the videotape used at trial. However, the trial court specifically found that La Madeleine's counsel had no good cause for failing to supplement discovery and produce the materials.

A trial court has a number of tools at its disposal for dealing with perjured testimony and upholding the sanctity of the judicial process, which we need not detail here. However, the issue facing the trial court is controlled by Texas Rule of Civil Procedure 193.6, which provides for the automatic exclusion of La Madeleine's evidence unless it can show: (1) good cause for failing to timely disclose the information; or (2) that the failure to timely disclose the information "will not unfairly surprise or unfairly prejudice" Lopez. *See* TEX.R. CIV. P. 193.6(a).

By its finding of no good cause for failing to disclose the videotape and photos, the trial court rejected the first exception to the automatic exclusionary effect of rule 193.6(a). After reviewing the record, we conclude there is no support for the trial court's implied finding as to the second exception—that Lopez was not unfairly surprised or prejudiced by admission of the undisclosed videotape and photos. Thus, the videotape and photos should have been excluded, and the trial court abused its discretion in ruling otherwise. Further, we conclude the trial court's error probably caused the rendition of an improper judgment in this case. TEX. R.APP. P. 44.1(a)(1).

Failing to reach both of the above conclusions would undercut the goal of encouraging full discovery of the issues and facts prior to trial. It would diminish the parties' abilities to evaluate realistically their cases and engage in meaningful settlement negotiations, conserving judicial resources for those cases that cannot be resolved short of trial. Further, it would increase the opportunities for parties— both plaintiff and defendant—to "sandbag" each other in hopes of a favorable trial outcome based on the disfavored practice of "trial by ambush."

Accordingly, we reverse the trial court's final judgment and remand this cause for further proceedings consistent with this opinion. However, for the reasons stated below, we affirm the trial court's order on Lopez's motion for sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lopez sued La Madeleine, his employer, alleging its negligence caused an on-the-job accident resulting in his injuries.[1] When the accident occurred, Lopez was about forty years old and had been employed at La Madeleine for twelve years, most recently as a baker. Lopez alleged that, as he was pulling a bread rack, his foot slipped on a damaged drain cover, which was bent or loose, and got caught in the open drain hole, causing him to fall backwards. Lopez struck his head, and the bread rack fell on him. Lopez alleged that he was unconscious for a period of time, received emergency care, and suffered serious and permanent injuries to his head, neck, back, and spine, including abrasions. He asserted actual damages for past and future pain, mental anguish, lost wages, loss of earning capacity, physical impairment, disfigurement, and medical and hospital expenses; costs of court; and pre- and post-judgment interest.

Lopez's First Request for Production to La Madeleine included Request No. 7: "Produce any tape recordings, pictures or videos of Plaintiff or any witness in this case." La Madeleine objected to Request No. 7 in its Answers and Objections, and stated it was "unaware of any such material." Lopez moved to compel discovery, requesting the trial court to strike La Madeleine's objections and order it to supple-

---

1. La Madeleine was a non-subscriber under the Texas worker's compensation laws. *See*

TEX. LAB.CODE ANN. § 406.033(d) (Vernon 2006).

ment the discovery requests. La Madeleine agreed to withdraw its objections to Request No. 7 and to supplement the response. Subsequently, in its Supplemental Responses to Lopez's First Request for Production, La Madeleine responded to Request No. 7: "Defendant is not currently in possession of any documents responsive to this request." This response was signed by Robert Turner, Lopez's trial counsel.

La Madeleine served no additional responses to Request No. 7. Further, despite Lopez's request that La Madeleine "produce a Privilege Log identifying any and all documents which Defendant contends are not discoverable based on privilege," no privilege log was produced identifying any videotape or photographs. On October 30, 2003, the trial court signed an order that stated, in part, "The Court further orders that the parties may not admit into evidence at the time of trial any documents which have not been produced." No videotapes or photographs were produced during discovery.

At trial, Lopez testified to his physical limitations, including inability to bend completely from the waist and to perform landscaping work. Then La Madeleine, outside the presence of the jury, indicated to the trial court it had—and wanted to introduce—a videotape and photographs (still photos taken from the videotape) taken after the discovery cutoff, showing Lopez performing landscape work about three weeks before trial. Lopez objected to the evidence based on La Madeleine's failure to produce the evidence. Lopez argued that La Madeleine had "made a choice" not to produce the evidence; the rules and the trial court's order required exclusion of the evidence; and counsel had no opportunity to determine if the evidence was authentic. Referring to the hearing on Lopez's motion to compel discovery and the trial court's October 30, 2003 order, counsel for La Madeleine stated that the videotape and photos were attorney work-product, and that he relied on the trial court's statement that it had to be produced at discovery only if he had intended to use it at trial. La Madeleine insisted that the evidence was still admissible "solely for the purposes of impeachment" and that counsel had prepared a trial brief "on the use of undisclosed evidence for impeachment." Lopez countered that such planning showed "a conscious regard to intend to do this." Lopez stated:

My point, Your Honor, when a party sends a request for specific documents and another party, the responsive party, intentionally withholds those documents in a manner that they know are [sic] going to be sprung on—these issues have been in contention throughout the course of this lawsuit. They've known what the issues were. The earnings capacity was an issue. We asked for these—this information, and it was intentionally withheld from discovery for over four weeks, Your Honor.

La Madeleine stated, "Well no, I was hoping he would tell the truth about his true physical capabilities, and I wouldn't have to use it."

La Madeleine's counsel continued to stress the evidence was offered solely for impeachment. Finally, and still outside the jury's presence, the trial court concluded:

There is another larger thing you can't do: You can't get up here and give false—false sworn testimony in front of the jury, which is personally what—after seeing these pictures, I'm really starting to think that may have happened. I'm not accusing of it [sic], but it certainly raises a substantial issue of that. That's something else you can't do, Counsel.

That's why they're coming in. The exceptions are noted. The tape will be shown to the jury. That's the ruling. . . . [2]

Thus, the trial court admitted the evidence over Lopez's objection. The trial court also denied Lopez's motion for mistrial based on the "late disclosure."

At the conclusion of the evidence, the jury answered "no" to Question No. 1: "Did the negligence, if any, of [La Madeleine] proximately cause the occurrence in question?"

Lopez filed a motion for new trial and for sanctions based in part on his arguments that the videotape and photographs were inadmissible and that counsel for La Madeleine had violated discovery rules by failing to disclose and produce the evidence. La Madeleine filed a response, arguing the previously undisclosed evidence was admissible for purposes of impeachment. At the hearing on the motion, Lopez argued that La Madeleine could have claimed a privilege, but did not, and it knowingly concealed evidence that was subject to disclosure in violation of the rules. Lopez argued that the practical effect of this conduct was that both sides will withhold evidence and at trial, spring evidence, and then, depending on the result, negotiate in good faith. La Madeleine made it clear that it was not taking the position that, under the rules, it did not have to supplement discovery responses when it obtained something within thirty days of trial; La Madeleine repeated that it believed it had the right to withhold the evidence and use it for impeachment at trial. Subsequently, the trial court denied the motion for new trial and the motion for sanctions as it related to the surveillance videotape and photographs.[3] The trial court issued a letter clarifying its rulings on the motions and stating, in part:

> While there was no good cause for Defendant's failure to supplement, and the tape was probably outcome determinative (owing to the perjury), I cannot find where a sanction would be just in this particular set of circumstances. Whatever hardship the failure to supplement caused Plaintiff, he brought it on himself by testifying to a falsehood at least twice. . . . .

This appeal followed.

## II. ADMISSION OF VIDEOTAPE AND PHOTOGRAPHS

In his first and third issues Lopez challenges the admission of the videotape and photographs, asserting the trial court abused its discretion in admitting the evidence over his objection and in overruling his motion for mistrial based on their admission.

### A. Standard of Review

■ We review the trial court's evidentiary ruling for an abuse of discretion.

---

2. La Madeleine characterizes Lopez's testimony as perjury, and the above statement from the trial court comes close to this characterization as well. Counsel for Lopez argued then and now that any discrepancies between Lopez's testimony and the videotape evidence are a result of his difficulties with the English language. Although we discuss Lopez's testimony using some of the terms utilized by the trial court and La Madeleine's counsel, we need not—and do not—reach the issue of whether Lopez's testimony was in fact perjurious.

3. Two videotapes were involved. Only one videotape was offered and admitted into evidence, and it is the subject of this appeal. As to the second videotape, the trial court granted the motion for sanctions, ordering counsel to pay $1,000 and "review his office policy to insure his knowledge of all information responsive to discovery." The second videotape and the trial court's rulings concerning that tape are not at issue in this appeal.

*Parker Plaza West, Ltd. v. Boniuk Invs., Ltd.,* 153 S.W.3d 729, 734 (Tex.App.-Dallas 2005, no pet.) (citing *Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2, 3 (Tex. 1994)). We apply the same standard in our review of a trial court's denial of a motion for mistrial. *Till v. Thomas,* 10 S.W.3d 730, 734 (Tex.App.-Houston [1st Dist.] 1999, no pet.). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998).

**B. Applicable Law**

■ The purpose of the discovery rules is to encourage full discovery of the issues and facts before trial so that parties can make realistic assessments of their respective positions in order to facilitate settlements and prevent trial by ambush. *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 913–14 (Tex.1992); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989); *Gutierrez v. Dallas Indep. Sch. Dist.,* 729 S.W.2d 691, 693 (Tex.1987). A party is under a duty to supplement its discovery responses if the party knows the responses are incomplete or are no longer true. Tex.R. Civ. P. 193.5; *Yeldell v. Holiday Hills Retirement & Nursing Ctr., Inc.,* 701 S.W.2d 243, 246 (Tex.1985) (applying predecessor rule).

■ The rules also prescribe the penalty for not supplementing discovery. Rule of civil procedure 193.6(a) is entitled "Failing to Timely Respond—Effect on Trial" and provides:

(a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex.R. Civ. P. 193.6(a). The rule is mandatory, and the penalty—exclusion of evidence—is automatic, absent a showing of: (1) good cause or (2) lack of unfair surprise or (3) unfair prejudice. *Alvarado,* 830 S.W.2d at 914 (applying former rule 215(5)); *Pilgrim's Pride Corp. v. Smoak,* 134 S.W.3d 880, 902 (Tex.App.-Texarkana 2004, pet. denied) (citing rule 193.6(a)). The sanction of automatic exclusion of undisclosed evidence, subject to the exceptions set forth in the rule, is well established. *Alvarado,* 830 S.W.2d at 914 (applying former rule 215(5)); *see Gee,* 765 S.W.2d at 396 (Tex.1989) (same); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 297–98 (Tex.1986) (per curiam) (same); *Smoak,* 134 S.W.3d at 902. The party offering the undisclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record. Tex.R. Civ. P. 193.6(b).

**C. Discussion**

■ La Madeleine argued below that previously undisclosed evidence was admissible for purposes of impeachment. However, that argument was rejected by the supreme court in *Alvarado* with respect to then-applicable rule 215(5) and its good cause exception:

[T]rial courts ... have given various reasons for allowing testimony despite the failure to comply with discovery rules. These reasons seem to share a basic rationale, sometimes expressed

and other times implicit, that *admitting the testimony allowed a full presentation of the merits of the case.* In the present case, for example, the trial court permitted a previously undisclosed witness to testify "in the interest of justice in getting everything on the table, which this court tries to do when possible . . . ." While it is certainly important for the parties in a case to be afforded a full and fair opportunity to present the merits of their contentions, it is not in the interest of justice to apply the rules of procedure unevenly or inconsistently. It is both reasonable and just that a party expect that the rules he has attempted to comply with will be enforced equally against his adversary. To excuse noncompliance without a showing of good cause frustrates that expectation.

*Alvarado,* 830 S.W.2d at 914 (emphasis added).

Contrary to the admonition in *Alvarado,* La Madeleine's position invites the uneven and inconsistent application of the discovery rules. Under it, La Madeleine asserts it may obtain information rendering its prior disclosures incomplete or untrue, and opt to violate the rules of discovery by not disclosing that information to its opponent. Having effectively impugned the sanctity of the judicial process by violating the rules of discovery, however, La Madeleine argues it may introduce the concealed information at trial in order to defend the sanctity of that same process—a sanctity it contends is impugned by the evidence introduced by its opponent. The result is effectively a "Catch–22": a party may withhold information and not disclose that its prior discovery responses are false unless it decides at trial that its opponent is testifying incorrectly, in which case it may introduce the withheld information. Rules 193.5 and 193.6 allow no such gamesmanship.

Relying on *Patterson v. State,* 632 S.W.2d 809, 811 (Tex.App.-Houston [14th Dist.] 1982 pet. ref'd), La Madeleine argues the trial judge "has the discretion to receive evidence which holds the promise of exposing falsehoods."[4] This is a false statement. As discussed above, rule 193.6 governs what the trial court may do when confronted with evidence that was undisclosed during discovery.[5]

We have also reviewed the trial brief tendered to the court by La Madeleine in support of its argument that previously undisclosed evidence may be admitted solely for impeachment purposes. It cites two cases to that effect: *Emery v. Rollins,* 880 S.W.2d 237 (Tex.App.-Houston [14th Dist.] 1994, writ denied), and *Gannett Outdoor Co. v. Kubeczka,* 710 S.W.2d 79 (Tex. App.-Houston [14th Dist.] 1986, no writ). Both of these cases predate rule 193.6, which was effective January 1, 1999. We need not discuss further La Madeleine's assertion that the trial court may violate the rules of civil procedure to root out false testimony.

The videotape and still photos were inadmissible at trial unless the record shows that one of the exceptions to Rule 193.6 applied: (1) that there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) that the failure to timely make, amend, or supplement the discovery response did not unfairly surprise or unfairly prejudice the other parties. *See* Tex.R. Civ. P. 193.6(a).

---

4. Moreover, in trying Patterson for armed robbery and in affirming his conviction, both the trial court and the appellate court in *Patterson* were unconstrained by the rules of civil procedure.

5. Also as discussed above, the trial court is not without other means of dealing with false testimony.

The trial court ruled out the existence of the first exception, stating in its letter that it could not find good cause for La Madeleine's failure to supplement discovery. Thus, we conclude the trial court impliedly found the failure to timely supplement the discovery response did not unfairly surprise or unfairly prejudice Lopez. *See* TEX.R. CIV. P. 193.6(a)(2); *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 384 (Tex.App.-Dallas 2003, pet. denied). We now address whether the record supports this implied finding.

### 1. Unfair Surprise or Unfair Prejudice

■ La Madeleine argues the record does support this implied finding. It points to the fact that Lopez had been questioned regarding his physical limitations and ability to perform manual labor during his deposition, and thus knew these issues were relevant to the litigation. Also, La Madeleine points out that Lopez was aware of his previous testimony and the landscaping work when he testified at trial. Thus, he could not have been surprised or prejudiced by La Madeleine's failure to timely supplement discovery answers.

In support of this argument, La Madeleine cites an unpublished case from the Corpus Christi Court of Appeals, *Wallace v. Munson*, No. 13–03–188–CV, 2004 WL 1902118 (Tex.App.-Corpus Christi 2004, no pet.) (not designated for publication). There, the trial court allowed evidence concerning the fair market value of appellee's cattle, despite the fact that appellee had stated a different measure of damages (the cost of recapturing the cattle's lost weight) was applicable. The court reasoned that before trial, appellant had

brought to appellee's attention a case identifying the market-value method as the proper measure of damages and that appellee had been asked in deposition about the possibility of using fair market value as the measure of damages. Thus, *Wallace* and La Madeleine focus on whether the objecting party could be said to have been surprised by the existence of a particular issue in the case.

■ We consider this focus on surprise as to the "issues" in a case inaccurate. Although it might be possible that untimely supplemented or amended discovery responses could cause surprise concerning the issues in a case, rule 193.6(a) relates to the discovery of *evidence;* its principal purpose—and most common application—is to protect a party from surprise concerning the existence of undisclosed evidence—not issues.[6] The rule applies when the existence of evidence was not disclosed in a timely manner, whether or not such evidence related to an issue both parties knew existed in the case. Thus, a party who failed to disclose the existence of an eye-witness to an auto accident cannot argue the absence of surprise or prejudice on the grounds that his party opponent was aware that whether the traffic light was red or green was an issue in the case.

La Madeleine points to nothing else in the record supporting its position that its failure to timely amend its discovery responses did not surprise or prejudice Lopez, and we have found none. Indeed, La Madeleine's principal argument is that Lopez cannot be unfairly surprised or prejudiced by its breach of the rules because the undisclosed evidence depicted Lopez going about his own activities—activities of which he was obviously aware. Because a party's own actions cannot be a

---

6. Normally, however, our system of practice relies on pleadings to protect parties from surprise concerning the issues relevant to a case. We need not cite the myriad rules of civil procedure governing pleadings to support this assertion.

surprise to that party, under this logic a trial court should allow the admission of undisclosed evidence under rule 193.6(a) as long as the evidence relates to the party's own deeds. The breadth of La Madeleine's contention is staggering. A party is obviously aware of his own actions, whether it be doing landscape work, attending a meeting, negotiating a contract, talking with a doctor or a lawyer, or reading and signing documents. Allowing the admission of undisclosed evidence as to a party's conduct of his or her own affairs would largely extinguish the rule 193.6(a)'s exclusionary effect, and eviscerate the rule's salutary effect of promoting full and complete discovery. *See Alvarado,* 830 S.W.2d at 913–14; *Gee,* 765 S.W.2d at 396; *Gutierrez,* 729 S.W.2d at 693.

Neither are we persuaded by the contention that Lopez should have anticipated that La Madeleine had and would introduce the videotape and photos concerning his physical capabilities. The rules were revised to make that sort of anticipation unnecessary. *See Ersek v. Davis & Davis, P.C.,* 69 S.W.3d 268, 272 (Tex.App.-Austin 2002, pet. denied) (citing *Snider v. Stanley,* 44 S.W.3d 713, 717 (Tex.App.-Beaumont 2001, pet. denied)); *see also Alvarado,* 830 S.W.2d at 915 ("A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory.")

La Madeleine also argues that any surprise or prejudice to Lopez resulting from its non-disclosure of the videotape and photos was not "unfair" because the tape showed that Lopez's testimony about the extent of his injuries was false. We reject this argument for at least three reasons. First, it is another variation on La Madeleine's theme that the trial court had a duty to prevent a perpetration of fraud in the court. Though such a duty exists, it

does not excuse the trial court from complying with the rules of civil procedure. Second, the persuasiveness of La Madeleine's argument hinges on the degree to which the undisclosed evidence is directly contradictory of the evidence presented at trial. Because the videotapes directly contradict Lopez's testimony, La Madeleine asserts it must be excused from not complying with its obligations under the rules of discovery. However, the degree to which undisclosed evidence will contradict evidence at trial will not be known in advance—it will only be evident when the evidence is adduced at trial.

Third, the problem that rule 193.6(a) sought to resolve exists in situations where the undisclosed evidence may not be so directly at odds with the evidence admitted at trial. Making the "unfairness" element of rule 193.6(a)(2)'s exception contingent on the impeachment value of the undisclosed evidence introduces a degree of uncertainty that would undercut the goals of full and complete disclosure. *See Alvarado,* 830 S.W.2d at 913–14; *Gee,* 765 S.W.2d at 396; *Gutierrez,* 729 S.W.2d at 693.

The burden was on La Madeleine to show that its failure to timely disclose the videotape and photos in response to Lopez's discovery requests would not unfairly surprise or prejudice Lopez. The record contains no such showing. As a result, we conclude the trial court erred in admitting the videotape and photos over Lopez's objections.

### 2. Harm

■ However, we may reverse a trial court's judgment based on an error in the admission or exclusion of evidence only if we conclude that the trial court made an error of law that probably caused the rendition of an improper judgment. Tex. R.App. P. 44.1(a)(1); *see Gee,* 765 S.W.2d at 396 (applying former rule). The jury

found that there was no liability and did not reach the damages question. On appeal, La Madeleine argues that the admission of the videotape and photos probably did not cause the rendition of an improper judgment. It also asserts that inconsistencies and contradictions in Lopez's trial testimony were sufficient to enable the jury to reject Lopez's liability argument.

 Whether the erroneous admission or exclusion of evidence probably caused the rendition of an improper judgment is "a judgment call entrusted to the sound discretion and good sense of the reviewing court from an evaluation of the whole case." *First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170, 172 (Tex.1983); *see Nissan Motor Co. Ltd. v. Armstrong,* 145 S.W.3d 131, 144 (Tex.2004) (whether erroneous admission of evidence was harmful "is often more a matter of judgment than precise measurement"). "[S]uch a judgment call must be determined from an evaluation of the whole case." *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818, 821 (Tex.1980); *see Gee,* 765 S.W.2d at 396. It is not necessary for the complaining party to prove that "but for" the exclusion of evidence, a different judgment would necessarily have resulted. *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992). The complaining party is only required to show that the exclusion of evidence probably resulted in the rendition of an improper judgment. *Id.* Thus, we must review the entire record to determine whether the judgment was controlled by the evidence that should have been excluded. *Gee,* 765 S.W.2d at 396; *see City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted.").

Here, the videotape and photographs were relevant not only as to damages, but also as to the truth and veracity of Lopez as a witness. Indeed, La Madeleine's principal argument for their admission was that they impeached Lopez as a witness. In its letter, the trial court stated that the tape "was probably outcome determinative, but it could have been outcome determinative only if the jury had believed [Lopez] had committed perjury, because the tape was in such clear contradiction to [Lopez's] clear testimony concerning his ability to work and make a living." Although "outcome determinative" is not the applicable standard for review, it is clear that the videotape and photos likely impacted the weight the jury accorded Lopez's testimony both as to causation and as to damages.

Further, we are concerned not only with whether or not Lopez should have prevailed based on his testimony at trial, but also on the effects of La Madeleine's introduction of the undisclosed evidence on his preparation for trial and the presentation of his case, both of which were undeniably impacted by the trial court's decision to admit the videotape and photos. Lopez was entitled to rely on the rules he has attempted to comply with and on the trial court's enforcement of the rules equally against La Madeleine. *See Alvarado,* 830 S.W.2d at 914.

Accordingly, and as the trial court recognized, we conclude the trial court's error in admitting the videotape and photos probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1); *see Gee,* 765 S.W.2d at 396.

### 3. Conclusion

Accordingly, after reviewing the entire record, we conclude there is no evidence to support the trial court's implied finding that La Madeleine met its burden to establish lack of unfair surprise or unfair preju-

dice to Lopez regarding the introduction of the undisclosed videotape and photographs and that error in admitting this evidence probably caused the rendition of an improper judgment. Accordingly, we resolve Lopez's first issue in his favor. As a result, we need not address Lopez's third issue. *See* TEX.R.APP. P. 47.1.

## III. MONETARY SANCTIONS

In his fourth issue, Lopez challenges the denial of his motion for sanctions. He contends he was entitled, pursuant to rule 215, to a sanctions award of $75,000, the amount of La Madeleine's last settlement offer, because of the "intentional and knowing concealment of evidence."

## A. Applicable Law and Standard of Review

 Under rule 215.2(b), if a trial court finds that a party has abused the discovery process, it may impose monetary sanctions authorized by paragraphs (2) and (8). TEX. RS. CIV. P. 215.2(b), 215.3. Paragraph (2) authorizes the trial court to impose sanctions in the form of discovery expenses or court costs. TEX.R. CIV. P. 215.2(b)(2). Paragraph (8) authorizes the trial court to charge the party abusing the discovery process with the reasonable expenses, including attorney's fees, caused by the abuse. TEX.R. CIV. P. 215.2(b)(8). Both of these sanctions are designed to remedy the abuse by compensating the aggrieved party for expenses incurred in the litigation. *See Ford Motor Co. v. Tyson*, 943 S.W.2d 527, 533 (Tex.App.-Dallas 1997, orig. proceeding) (applying former rule 215(2), (3)), *mand. granted in part on other grounds, In re Ford Motor Co.*, 988 S.W.2d 714 (Tex.1998). Any monetary sanctions available for abuse of discovery are limited to reasonable expenses, including attorney's fees, caused by the abuse. *Clone Component Distribs. of Am., Inc. v.*

*State*, 819 S.W.2d 593, 597 (Tex.App.-Dallas 1991, no writ) (applying former rule 215(2)(b)(2) and (8)).

## B. Discussion

 Lopez's requested sanction does not compensate him for expenses incurred in the litigation caused by the abuse, nor is it discovery expenses or court costs. Rather, we agree with La Madeleine that Lopez's requested sanction is compensation for his personal injury claim. *See* TEX.R. CIV. P. 215.2(b)(2), (8); *Tyson*, 943 S.W.2d at 533; *Clone Component Distrib. of Am., Inc.*, 819 S.W.2d at 597. Accordingly, we conclude the trial court did not abuse its discretion in denying Lopez's motion for sanctions. We resolve Lopez's fourth issue against him.

## IV. FACTUAL SUFFICIENCY

In his second issue, Lopez contends the jury's answer to Question No. 1 finding no negligence is against the great weight and preponderance of the evidence and is manifestly unjust. Because our disposition of Lopez's first issue entitles him to remand and further proceedings, we need not address his second issue. *See* TEX.R.APP. P. 47.1

## V. CONCLUSION

In his letter to counsel addressing his holdings on Lopez's motions for new trial and for discovery sanctions, the trial judge stated: "To grant the [discovery] sanction requested by Plaintiff, or to grant a new trial on this basis, would be to reward Plaintiff for his perjury, in the face of a strong suggestion that he has no legitimate evidence to support his claim." La Madeleine makes a similar argument here—that reversing the case because the trial court allowed it to present undisclosed evidence to refute Lopez's testimony would reward perjury. We are also

concerned about rewarding perjury; however, we are also concerned about the intentional violation of discovery rules and the return to the days of "trial by ambush" as a accepted trial strategy. Just as Lopez should not benefit from any false testimony, La Madeleine should not benefit from "lying behind the log." The discovery rules promote a full disclosure of evidence to resolve the case by trial or settlement. *See Alvarado,* 830 S.W.2d at 913–14; *Gee,* 765 S.W.2d at 396; *Gutierrez,* 729 S.W.2d at 693. Excluding La Madeleine's undisclosed evidence from trial was the sanction to La Madeleine for subverting those discovery rules.

As for Lopez, on remand (and absent settlement) a jury will determine the true value of his claims. At that time, he may well be confronted with both the evidence of his physical capabilities and his prior statements under oath concerning those capabilities. In any event, it is unlikely that Lopez will benefit from his prior testimony.

Having resolved Lopez's first issue in his favor, we reverse the trial court's final judgment and remand this case for further proceedings. Having resolved Lopez's fourth issue against him, we affirm the

trial court's order on his motion for sanctions.